

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00416-CV

**McLENNAN COUNTY APPRAISAL DISTRICT,**

**Appellant**

**v.**

**AMERICAN HOUSING FOUNDATION,
WACO  PARKSIDE VILLAGE, LTD. AND
WACO ROBINSON GARDEN, LTD.,**

**Appellees**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2005-2197-1**

## O P I N I O N

American Housing Foundation, Waco Parkside Village, Ltd. and Waco Robinson Garden, Ltd. sought judicial review in district court of the McLennan County Appraisal District's denial of their applications for exemptions from ad valorem taxes for two apartment complexes used to provide low-income and moderate-income housing. Following a bench trial, the trial court ruled that the entities were entitled to the exemptions.  MCAD asserts in its sole issue that they do not qualify for tax-exempt

status because Waco Parkside Village, Ltd. and Waco Robinson Garden, Ltd. are limited partnerships that are "99.98% or more owned by purely for-profit entities for purely profit motives." We will affirm.

## Factual and Procedural History

The parties stipulated to most of the relevant facts. American Housing Foundation (AHF) is a community housing development organization and a section 501(c)(3) non-profit entity. The apartment complexes at issue are the Parkside Village Apartments and the Robinson Garden Apartments. Waco Parkside Village, Ltd. (Parkside Village) is the record titleholder of the Parkside Village Apartments. Waco Robinson Garden, Ltd. (Robinson Garden) is the record titleholder of the Robinson Garden Apartments. AHF Parkside Village, L.L.C. is the sole general partner of Parkside Village and is a wholly owned subsidiary of AHF. AHF Robinson Garden, Inc. is the managing general partner of Robinson Garden and is a wholly owned subsidiary of AHF. AHF is the administrative general partner of Robinson Garden.

Both apartment complexes provide low-income and moderate-income housing. The limited partners for Parkside Village and Robinson Garden provided the equity investment for these properties. The limited partners received federal tax credits and depreciation because of their investment.

Appellees' first amended petition sought judgment for an ad valorem tax exemption for the properties for 2004, 2005 and 2006 under section 11.1825 of the Tax Code. *See* TEX. TAX. CODE ANN. § 11.1825 (Vernon 2008). MCAD's second amended answer and counterclaim for declaratory judgment generally denied the allegations,

specifically denied that Appellees had exhausted their administrative remedies for the 2004 tax year, and counterclaimed for a declaration that section 11.1825 was unconstitutional as applied. The trial court rendered judgment for Appellees, finding that the properties qualified for the exemption in 2005 and 2006.

## Applicable Law

Article VIII, section 2 of the Texas Constitution permits the legislature to exempt certain properties from taxation. The constitutional exemption here concerns "buildings used exclusively and owned by … institutions engaged primarily in public charitable functions." TEX. CONST. art. VIII, § 2(a). Section 11.18 of the Tax Code specifically defines the provision of "housing for low-income and moderate-income families" as a charitable function. TEX. TAX. CODE ANN. § 11.18(d)(18) (Vernon Supp. 2010).

Section 11.1825 of the Tax Code provides an exemption from ad valorem taxation to an organization that owns property used to provide low-income housing. *See id.* § 11.1825. To qualify for this exemption, an organization ordinarily must have, for at least the three preceding years, (a) been a section 501(c)(3) entity; (b) "met the requirements of a charitable organization provided by Sections 11.18(e) and (f);" and (c) had as one of its purposes providing low-income housing." *Id.* § 11.1825(b). A limited partnership that does not meet these requirements may nevertheless qualify for the exemption if a qualifying charitable organization owns 100 percent of the general-partner interest in the limited partnership. *Id.* § 11.1825(c). Section 11.1825 provides other requirements that are not in dispute.

**Standard of Review**

Statutory tax exemptions are disfavored and strictly construed. *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Harris County Appraisal Dist. v. Primrose Houston 7 Hous., L.P.*, 238 S.W.3d 782, 786 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). An organization claiming an exemption bears the "burden of proof of clearly showing that the organization falls within the statutory exemption." *N. Alamo Water Supply*, 804 S.W.2d at 899; *accord Primrose Houston 7*, 238 S.W.3d at 786.

"Before an organization can be considered for qualification for tax exempt status under . . . the Texas Tax Code, that organization must first meet the applicable constitutional requirements which entitle those organizations to seek the exemption." *N. Alamo Water Supply*, 804 S.W.2d at 899; *accord Primrose Houston 7*, 238 S.W.3d at 785 n.9.

MCAD asserts in its sole issue that Appellees are not entitled to the exemptions because they do not meet the constitutional requirement[1] that a qualifying organization must be "engaged primarily in public charitable functions." TEX. CONST. art. VIII, § 2(a). MCAD asserts that they do not satisfy this standard because: (1) "99.98% or more [of the ownership interests in Parkside Village and Robinson Garden are] owned by purely for-profit entities for purely profit motives, and [these for-profit entities] operate[ ] the property in question for the profit ends of those owners"; and (2) even though the

---

[1] The parties stipulated that AHF, Parkside Village, and Robinson Garden met the statutory requirements of section 11.1825, but the written stipulation also stated that MCAD disputed whether the provision of low-income housing by these entities was the "primary purpose" of these entities or their "primary purpose" for owning the properties.

apartments are being leased to low-income families, "they are being so utilized for the profit of the investors, not out of any charitable motives of the owners."

MCAD refers to cases construing the former version of article VIII, section 2(a), which required organizations seeking an exemption to be "institutions of purely public charity." TEX. CONST. art. VIII, § 2 (amended 1999). The Supreme Court first established the test for determining whether an organization was a "purely public charity" in *City of Houston v. Scottish Rite Benevolence Ass'n*, 111 Tex. 191, 230 S.W. 978 (1921).

> [A]n institution was one of "purely public charity" where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

*Id.* at 981 (quoted by *N. Alamo Water Supply*, 804 S.W.2d at 897).

"The word 'purely' was meant 'to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity.'" *Id.* (quoting *Widows' & Orphans' Home of Odd Fellows of Ky. v. Commonwealth*, 126 Ky. 386, 103 S.W. 354, 358 (1907)); *accord N. Alamo Water Supply*, 804 S.W.2d at 897. However, the word "purely" no longer appears in the constitutional definition of qualifying institutions. *See* TEX. CONST. art. VIII, § 2. Thus, the issue is whether the owner of the property is "engaged *primarily* in public charitable functions." *Id.* (emphasis added).

The parties stipulated that the titleholders of the properties at issue, Parkside Village and Robinson Garden, "each engage in the rental of low-income or moderate-

income housing and related activities." The trial court made a similar finding of fact, namely, that these entities "engage *exclusively* in the rental of low-income or moderate-income housing and related activities." (emphasis added). The trial court similarly found that Parkside Village and Robinson Garden "own these two properties for the purpose of renting to low-income or moderate-income persons or families."

Based on these and other findings, the trial court made the following conclusion of law:

> 2. The general partners of both Waco Parkside Village, Ltd. and Waco Robinson Garden, Ltd., which are 100% controlled by AHF, operate, manage and control the properties exclusively. In order to determine whether the property is being used primarily to provide housing to low to moderate-income families, the Court focuses its analysis on how the property is actually used, not the financial interest of the limited partner. Accordingly, the fact that Waco Parkside Village, Ltd. and Waco Robinson Garden, Ltd. are financed by non-charitable entity investments in low-income housing tax credits does not render § 11.1825 unconstitutional in this case.

We agree with the trial court's analysis.

Under the constitution, the question is whether Parkside Village and Robinson Garden are "engaged primarily in public charitable functions." *See* TEX. CONST. art. VIII, § 2. The trial court found that they are engaged exclusively in the charitable function of providing low-income or moderate-income housing. MCAD does not challenge this finding.

The fact that other persons or entities with a profit motive have invested resources in these entities is irrelevant. These limited partners have no control over the operation of the limited partnerships. They are no different than a person or entity that

makes a donation to a charitable organization. In this situation, the donor may hope for favorable publicity and likely expects to receive a tax deduction for the charitable contribution, but the donor usually has no legal authority to direct the operation of the charitable organization.[2]

The limited partnerships that own the properties at issue are engaged *exclusively* in the provision of low-income or moderate-income housing. MCAD does not dispute that this is a public charitable function. Article VIII, section 2 requires only that such institutions be *primarily* engaged in a public charitable function to qualify for an exemption from ad valorem taxes. MCAD also does not dispute that the organizational structure of the entities in question satisfies the requirements of section 11.1825.

Because these entities established that they meet the constitutional and statutory requirements for the tax exemptions they seek, the trial court properly rendered judgment in their favor. MCAD's sole issue is overruled.

Having overruled MCAD's sole issue, we affirm the judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed March 9, 2011
[CV06]

---

[2] An exception to this general rule would be an unincorporated association of which the donor was a member. *See Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169-70 (Tex. 1992).